IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| GLENN M. HEAGERTY, JR., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 2:14-CV-00132-WCO-JCF |
| OCWEN LOAN SERVICING, LLC, | : | |
| EQUIFAX INFORMATION SERVICES | : | |
| LLC, EXPERIAN INFORMATION | : | |
| SOLUTIONS INC., and TRANS UNION | : | |
| LLC, | : | |
| | : | |
| Defendants. | : | |

## <u>NON-FINAL REPORT AND RECOMMENDATION</u>

This case is before the Court on the Motion To Dismiss filed by Defendant

Ocwen Loan Servicing, LLC ("Ocwen").  (Doc. 42).  For the reasons discussed

below, it is **RECOMMENDED** that Defendant's motion be **GRANTED**.

## <u>FACTUAL AND PROCEDURAL HISTORY</u>[1]

---

[1] These facts are taken from Plaintiff's Amended Complaint (Doc. 40), exhibits attached to the Amended Complaint (Doc. 40-1), and documents attached as exhibits to Ocwen's motion to dismiss Plaintiff's original Complaint, i.e., a Security Deed evidencing Plaintiff's mortgage loan and an Assignment of the Security Deed to Ocwen (*see* Docs. 14-2 and 14-3).  In ruling on a motion to dismiss, the court may consider documents attached to the motion if those documents are central to the complaint and not in dispute.  *See Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999); *Okim v. Bank of Am.*, No. 1:12-cv-01759-TWT-GGB, 2012 U.S. Dist. LEXIS 168788, at *7 (N.D. Ga. Oct. 25, 2012) (noting that the court is authorized to consider documents attached to motions to dismiss where "the document is central to Plaintiff's claims, and the authenticity of

On April 11, 2008, Plaintiff obtained a mortgage loan in the amount of $192,000.00 from Capital One Home Loans, LLC., as evidenced by a Security Deed containing Plaintiff's notarized signature, recorded in the real property records of Forsyth County, Georgia.[2]  (*See* Doc. 14-2).  The Security Deed lists Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee for Capital One.  (*Id.* at 1).  The Security Deed also explained that a "Loan Servicer" is an entity "that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law."  (*Id.* at 11).  At some point prior to June 2012, Bank of America, N.A. ("Bank of America") obtained servicing rights to the Loan.  (Doc. 40 at ¶ 19).  In June 2012, Ocwen obtained the servicing rights to the Loan from Bank of America.  (*Id.* at ¶ 62 and n.34; Doc. 40-1 at 39).  Beginning in July 2012, Plaintiff began sending monthly mortgage payments to Ocwen, which he made until January 2014.  (Doc. 40 at ¶ 19).

On January 16, 2014, Plaintiff received a notice from Ocwen indicating that he had not made the current payment on the Loan.  (*Id.*; Doc. 40-1 at 8).  After receiving the letter, Plaintiff obtained a copy of the Security Deed and requested

---

the document has not been challenged").  Plaintiff did not dispute the authenticity of those documents.

[2] Plaintiff has not alleged facts tending to show that he did not actually borrow $192,000.00 from Capital One as reflected in the Security Deed or that he did not sign the Security Deed.  (*See generally* Doc. 40).

copies of his credit reports from Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union"). (Doc. 40 at ¶¶ 20, 21). Plaintiff also called Capital One "to make sure it was receiving the money it was due on an alleged loan it had allegedly made to the Plaintiff," and Plaintiff alleges that "[t]he customer service representative was heard to say that there was no record of the loan number listed on the security deed and that [Capital One] did not have a security interest in the subject property." (*Id.* at ¶ 23).

On January 29, 2014, Plaintiff sent Ocwen a letter which "disput[ed] the alleged debt, demand[ed] validation of the alleged debt, and request[ed] the identity of the current creditor of the alleged debt." (*Id.* at ¶ 22; *see also* Doc. 40-1 at 16-17). Two days later, Plaintiff sent to Ocwen a letter requesting "an explanation of the unauthorized inquiry dated June 25, 2012[,] listed in his Experian Personal Credit Report." (Doc. 40 at ¶ 25; *see also* Doc. 40-1 at 19). Plaintiff sent another letter to Ocwen on March 1, 2014 disputing Ocwen's February 1, 2013 and January 28, 2014 credit report inquiries as unauthorized by Plaintiff, and requesting that the inquiries be removed from his consumer file. (Doc. 40-1 at 36). On April 4, 2014, Plaintiff received a letter from Ocwen's research department informing him that Ocwen was "authorized to review the Plaintiff's credit profile at any time without the Plaintiff's permission because

'Ocwen' is the servicer" of Plaintiff's mortgage loan.  (Doc. 40 at ¶ 59; *see also* Doc. 40-1 at 38).  The letter explained that "Ocwen is the servicer of the loan and is authorized to review [Plaintiff's] credit profile at any time without [his] permission, as long as Ocwen is using the information for business purposes." (Doc. 40-1 at 38).  The letter further informed Plaintiff that "the loan is past due for the February 1, 2014 payment."  (*Id.*).

On March 18, 2014, Ocwen sent Plaintiff a Notice of Default informing him that he was in default on his loan, again advising him that it was servicing the loan, and instructing him on how to cure the default.  (Doc. 40-1 at 40-41).  Ocwen sent another letter to Plaintiff on March 27, 2014 advising him of "alternative solutions to avoid foreclosure."  (Doc. 40-1 at 42-43).  On May 28, 2014, MERS, as nominee for Capital One, assigned all beneficial interest in the Security Deed to Ocwen, as evidenced by an Assignment recorded in the real property records of Forsyth County, Georgia.  (Doc. 14-3).

Plaintiff, proceeding *pro se*, filed this lawsuit on June 18, 2014 against Ocwen, Equifax, Experian, and Trans Union for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").[3]  As to Defendant Ocwen, Plaintiff alleged in Count One that on June 25, 2012, February 1, 2013, and January 28, 2014, Ocwen "willfully violated 15 U.S.C. § 1681b(f) by obtaining

---

[3] Plaintiff also named Ocwen Loan Servicing, Inc. and Innovis Data Solutions, Inc. as Defendants, but he has voluntarily dismissed those claims.  (*See* Docs. 11, 12).

and using consumer reports on Plaintiff without a properly certified permissible purpose." (Doc. 1 at ¶ 48). In Count Fifteen, Plaintiff alleged that Ocwen "negligently violated 15 U.S.C. § 1681b(f) by obtaining and using consumer reports on Plaintiff without a properly certified permissible purpose." (*Id.* at ¶ 80).[4]

Rather than filing an answer, Ocwen filed a motion to dismiss Plaintiff's FCRA claims against it for failure to state a claim.[5] (Doc. 14). In a September 23, 2014 Report and Recommendation, the undersigned recommended that Defendant's motion be denied without prejudice and recommended that Plaintiff be allowed to file an amended complaint:

> in which he sets out additional facts in support of his FCRA claims against Defendant Ocwen. Plaintiff should also include facts concerning the loan referenced in the Security Deed attached to Ocwen's response, Ocwen's relationship to the loan, e.g., servicer, etc., and facts concerning its servicing of the loan, including when it became the servicer, Plaintiff's submission of loan payments to Ocwen, etc. If Plaintiff contends that Ocwen had no relationship to that loan and was not the servicer when it allegedly obtained his consumer reports on June 25, 2012, February 1, 2013, and January 28, 2014, he should provide factual support for those contentions in his amended complaint. Plaintiff is cautioned, however, that FEDERAL RULE OF CIVIL PROCEDURE 11, which applies to represented and unrepresented parties alike, requires that his "factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *See* FED. R. CIV. P. 11(b)(3). If Ocwen was in fact the servicer of Plaintiff's loan, Plaintiff should not allege otherwise, and he should

---

[4] Counts One and Fifteen were the only counts asserted against Ocwen.

[5] The other Defendants did not move to dismiss Plaintiff's Complaint.

also set forth facts that plausibly show that in spite of Ocwen's status
as servicer, Ocwen obtained and used Plaintiff's consumer report for
an impermissible purpose under the FCRA.

(Doc. 34 at 8-10).   The undersigned cautioned Plaintiff that "[t]o avoid dismissal,

he must assert 'sufficient factual matter, accepted as true,' that Defendant did not

have a permissible purpose for obtaining his consumer report.    It is not

Defendant's burden at this stage to show otherwise." (*Id.* at 9 n.4).  District Judge

William C. O'Kelley adopted that Report and Recommendation on October 30,

2014.  (*See* Doc. 37).

Plaintiff then filed an Amended Complaint (Doc. 40) in which he asserts

claims against all Defendants under the FCRA (Doc. 40 at Counts One through

Four), and he also asserts a claim against Ocwen under the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Doc. 40 at Count Seven).[6]

Ocwen again moved to dismiss Plaintiff's claims against it (Doc. 42); Plaintiff

filed a response in opposition to the motion (Doc. 56), and Ocwen filed a reply

(Doc. 60).  Briefing is therefore complete, and the undersigned now considers the

merits of Defendant's motion.[7]

## **DISCUSSION**

## I.     **Motion to Dismiss Standard**

---

[6] Plaintiff's Amended Complaint skips from Count Four to Count Seven.  Plaintiff
concedes that is a typographical error.  (*See* Doc. 56 at 1-2).
[7] The other Defendants answered Plaintiff's Amended Complaint (*see* Docs. 43,
44, 45) without moving to dismiss it.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED R. CIV. P. 8(a)(2). That standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

To state a claim that can survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678-79.  A complaint is not sufficient "if it tenders [only] 'naked assertion[s]' devoid of 'further factual enhancement.' "  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). To be plausible, a complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct."  *Iqbal*, 556 U.S. at 679.  Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555 (internal citations omitted); *see also Boyd v. Peet*, 249 Fed. Appx. 155, 157 (11th Cir. 2007)

(unpublished decision) (affirming the district court's order granting a motion for judgment on the pleadings and explaining that "[t]he complaint's allegations must plausibly suggest that the defendant has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff's complaint should be dismissed").

"Additionally, because Plaintiff[ is] acting pro se, [his] 'pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.' " *Shields v. Bank of Am.*, No. 2:11-CV-00267-RWS, 2012 U.S. Dist. LEXIS 30183, at * 3 (N.D. Ga. Mar. 6, 2012) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)). " 'This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action.' " *Id.* (quoting *Thomas v. Pentagon Fed. Credit Union*, 393 Fed. Appx. 635, 637 (11th Cir. 2010)).

## II.     Plaintiff's FCRA Claims Against Ocwen

In Count Four of his Amended Complaint, Plaintiff alleges that Ocwen violated 15 U.S.C. § 1681b(f) "four times when it obtained credit reports about the Plaintiff from [Experian] on June 25, 2012, February 1, 2013, January 28, 2014, and April 17, 2014 for impermissible purposes." (Doc. 40 at ¶ 90).  He now also claims that Ocwen violated 15 U.S.C. § 1681s-2(b)(1)(A) "at least eight times" by failing "to perform an investigation to identify the original creditor, current

creditor, MIN ID, or the entity on whose behalf it was allegedly servicing an alleged obligation of Plaintiff's" in response to Plaintiff's "disputes" that he "initiated . . . directly with Defendants [Equifax, Experian, and Trans Union] and received by [Ocwen]." (*Id.* at ¶ 89).

A.     15 U.S.C. § 1681b(f) Violations

15 U.S.C. § 1681b(a) provides that "any consumer reporting agency may furnish a consumer report" only under certain enumerated circumstances.   15 U.S.C. § 1681b(f) further provides that "[a] person shall not use or obtain a consumer report for any purpose unless—(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with [15 U.S.C. § 1681e] by a prospective user of the report through a general or specific certification."   The FCRA sets forth several permissible purposes for which a consumer reporting agency may furnish a consumer report, including the provision of consumer reports to a person:

- who "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, *or review or collection of an account of*, the consumer."   15 U.S.C. § 1681b(a)(3)(A) (emphasis added);

- who "intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation."  15 U.S.C. § 1681b(a)(3)(E); or

- who "otherwise has a legitimate business need for the information -- . . . (ii) to review an account to determine whether the consumer continues to meet the terms of the account."  15 U.S.C. § 1681b(a)(3)(F)(ii).

The undersigned finds that Plaintiff's conclusory allegation that Ocwen violated the FCRA by obtaining his credit reports "for impermissible purposes" (Doc. 40 at ¶ 90) is insufficient to state a claim against Ocwen under the FCRA. Plaintiff's Amended Complaint makes clear that Ocwen began servicing his mortgage loan in June 2012, regardless of his allegation that he "has no firsthand knowledge" that Ocwen is the loan servicer.  (*See* Doc. 40 at ¶ 19).  Plaintiff alleges that he has reviewed documents, including public filings with the U.S. Securities and Exchange Commission, that indicate that Ocwen obtained the servicing rights in June 2012 (*id.* at ¶ 62 and n.34); he attached to his Amended Complaint a letter from Bank of America stating that the servicing rights were transferred to Ocwen on June 15, 2012 (*see* Doc. 40-1 at 39); he alleges that a Bank of America employee told him in early July 2012 that Bank of America would no longer accept his payments and that he should contact Ocwen to make

his payments (Doc. 40 at ¶ 19); he alleges that he then sent his payments to Ocwen from July 2012 to January 2014 (*id.*); and he alleges that he received a letter from Ocwen in April 2014, which he attached, stating that it was "authorized to review the Plaintiff's credit profile at any time without the Plaintiff's permission, as long as 'Ocwen' is using the information for business purposes because 'Ocwen' is the servicer of the alleged loan" (*id.* at ¶ 59;  Doc. 40-1 at 38); and he attached to his Amended Complaint a letter from Ocwen dated March 18, 2014 informing him that the loan was in default and stating "As you know, OCWEN is currently servicing the loan" (Doc. 40-1 at 40).  Critically, Plaintiff has not alleged any facts that plausibly show that Ocwen was not the loan servicer or that it had no relationship to the loan at issue.

Plaintiff argues in response to Defendant's motion that Capital One "did not make a loan to Plaintiff nor did it have in interest in the property," and therefore, Ocwen "would not have been servicing on behalf of [Capital One], the alleged debt is unsecured, and payments it collected from Plaintiff went to a party unknown to Plaintiff."  (Doc. 56 at 7-8).  The factual basis for Plaintiff's contention that Capital One did not make a loan to him is unclear, particularly in light of the Security Deed which bears his notarized signature and which shows that he borrowed $192,000 from Capital One on April 11, 2008, and that his property secured that loan.  (*See* Doc. 14-2).  Moreover, Plaintiff then proceeded to make payments on

that loan to servicers Bank of America and then Ocwen until January 2014.  (*See* Doc. 40 at ¶ 19).  It appears that Plaintiff's assertion that Capital One "did not make a loan to Plaintiff nor did it have an interest in the Plaintiff's property" rests on his alleged conversation with a Capital One customer service representative on February 3, 2014, during which "[t]he customer service was heard to say that there was no record of the loan number listed on the security deed and that [Capital One] did not have a security interest in the subject property," and on his assertion that a letter he sent to Capital One on February 4, 2014 to the address listed on the April 11, 2008 Security Deed was returned to him as undeliverable.  (*See* Doc. 40 at ¶¶ 23, 24; Doc. 40-1 at 18).  Those allegations are insufficient to show that Plaintiff did not enter into a mortgage loan transaction with Capital One on April 11, 2008, that Ocwen did not begin servicing the loan in June 2012, or that Ocwen had no reason to believe that Plaintiff did not owe the payments under the mortgage loan agreement.  *See, e.g.*, *Eaton v. Cent. Portfolio Control, Inc.*, No. 14-747(DSD/FLN), 2014 U.S. Dist. LEXIS 170067, at *3-4 (D. Minn. Dec. 9, 2014) (finding that debt collector had permissible purpose for accessing the plaintiff's credit report, i.e., in connection with its collection on the account, and explaining that "[a]lthough Eaton disputes whether he owed any debt at all, such a dispute is immaterial so long as [the defendant] had reason to believe that Eaton defaulted on the account" (internal quotation omitted)).

In light of Ocwen's status as Plaintiff's mortgage loan servicer on the dates it allegedly obtained his credit reports, i.e., June 25, 2012, February 1, 2013, January 28, 2014, and April 17, 2014, there are several permissible purposes for which Ocwen could have requested his consumer report, including using the information in connection with its "review or collection of" Plaintiff's account, 15 U.S.C. § 1681b(a)(3)(A), "in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation," 15 U.S.C. § 1681b(a)(3)(E), or "to review an account to determine whether the consumer continues to meet the terms of the account," 15 U.S.C. § 1681b(a)(3)(F)(ii).   In fact, in Ocwen's March 29, 2014 letter to Plaintiff, it explained that as the servicer of the loan, it was authorized to review Plaintiff's credit profile "as long as Ocwen is using the information for business purposes," and then informed him that his account was past due.  (Doc. 40-1 at 38).  Plaintiff has not alleged facts that plausibly show that in spite of Ocwen's relationship to his mortgage loan, it had no permissible purpose for obtaining his credit reports. Thus, Plaintiff has failed to state a claim against Ocwen based on its obtaining Plaintiff's credit reports after it began servicing his loan.  *See, e.g.*, *Humphreys v. Fed. Nat'l Mortg. Ass'n*, No. 12-cv-06261, 2014 U.S. Dist. LEXIS 12342, at *2, 4-8 (E.D. Pa. Jan. 30, 2014) (dismissing plaintiff's FCRA claim against purchaser of plaintiff's mortgage even though plaintiff alleged that "he had no business dealings

with the defendant nor gave his consent to the defendant to acquire his credit report" because the defendant had purchased the plaintiff's mortgage and therefore had a permissible purpose in obtaining the report); *see also Sartori v. Susan C. Little & Assocs., P.A.*, No. 12-515 JB/LFG, 2013 U.S. Dist. LEXIS 117109, at *34-35 (D. N.M. June 27, 2013) (finding that the plaintiff had not shown that the servicer had pulled a consumer report, but explaining that "even if [the servicer] pulled Sartori's credit report, it would be permissible for [it] to do so in order to review the accuracy of his account" (citing 15 U.S.C. §§ 1681b(a)(3)(A) & (F))), *adopted by* 2013 U.S. Dist. LEXIS 116036 (D. N.M. July 30, 2013), *aff'd* 2014 U.S. App. LEXIS 12925, at *10-11 (10th Cir. July 9, 2014) (assuming that the servicer needed a proper purpose for pulling the plaintiff's credit score but "easily" finding a proper purpose, i.e., "review or collection of [the plaintiff's] account," under § 1681b(a)(3)(A)).

Accordingly, it is **RECOMMENDED** that Ocwen's motion to dismiss Plaintiff's FCRA claim, premised on alleged violations of 15 U.S.C. § 1681b(f), be **GRANTED**.

### B.   15 U.S.C. § 1681s-2(b)(1)(A) Violations

The FCRA provides that when a furnisher of information to consumer reporting agencies, such as Ocwen, receives notification "of a dispute with regard to the completeness or accuracy of any information provided by a person to a

consumer reporting agency," the furnisher "shall . . . conduct an investigation with respect to the disputed information; . . . review all relevant information provided by the credit reporting agency . . . ; . . . and report the results of the investigation to the credit reporting agency." 15 U.S.C. § 1681s-2(b)(1)(A)-(C). If the furnisher determines that the information is incomplete or inaccurate or cannot be verified, then the furnisher has additional duties set forth in the statute, including reporting the results to all other consumer reporting agencies to which the furnisher provided the information, and modify, delete, or permanently block the reporting of that information. *See* 15 U.S.C. § 1681s-2(b)(1)(D)-(E).

Ocwen argues that Plaintiff's FCRA claim must be dismissed for failure to state a claim because Plaintiff alleges no facts to support his conclusory allegation that Ocwen failed to investigate his alleged "disputes" concerning the identity of the creditor of the loan. (*See* Doc. 42-1 at 16). The undersigned agrees.

"To be successful on this claim, [a] plaintiff[] must allege that a furnisher of information:

> (1) failed to conduct an investigation with respect to the disputed information; (2) failed to review all relevant information provided by the consumer reporting agency pursuant to § 1681i(a)(2) of the FCRA; (3) failed to report the results of the investigation to the consumer reporting agency; or, (4) if an item of information disputed by a consumer is found to be inaccurate, incomplete, or cannot be verified after any reinvestigation, failed to modify, delete, or permanently block the reporting of that item of information.

*Smith v. Bank of Am. Home Loans*, 968 F. Supp. 2d 1159, 1166-67 (M.D. Fla. 2013) (quoting *Howard v. DirecTV Grp., Inc.*, No. CV 109-156, 2012 U.S. Dist. LEXIS 70715, at *13-14 (S.D. Ga. May 21, 2012)).

Here, Plaintiff alleges that he "did not borrow $192,000 from [Ocwen] in April 2008 for a real estate loan or conventional mortgage," that he "does not owe [Ocwen] any money for an alleged real estate loan or conventional mortgage," and that he notified Ocwen and the defendant consumer reporting agencies (Experian, Equifax, and Trans Union) that he disputes the alleged debt, but in spite of investigations into his disputes, his credit reports continue to reflect that he has a credit account, specifically a mortgage account, with Ocwen Loan Servicing.  (*See* Doc. 40 at ¶¶ 34-51).  Plaintiff alleges further that:

> [Ocwen] was notified at least eight times by the [other Defendants] that the Plaintiff disputed the information each reported was provided by the Defendant [Ocwen].  [Ocwen] continued to provide to the [other Defendants] in response to the Plaintiff's disputes information that incorrectly shows the Plaintiff borrowed $192,000 from it for a real estate loan or conventional mortgage.

(*Id.* at ¶ 52).

The undersigned finds that Plaintiff's allegations are insufficient to show that Ocwen did not conduct an investigation and report the results of the investigation to the credit reporting agencies as required by § 1681s-2(b)(1)(A)-(C).  In fact, Plaintiff admits that the consumer reporting agencies informed him repeatedly that his disputes had been investigated and that Ocwen determined that

the account belonged to Plaintiff as had been reported.  (*See* Doc. 40 at ¶¶ 39, 40, 41, 44, 45, 48, 49, 50; *see also* Doc. 40-1 at 20-22).  Nor has Plaintiff sufficiently alleged facts that plausibly show that Ocwen determined that the information it provided to the credit reporting agencies was incomplete or inaccurate or could not be verified, thus triggering the additional obligations set forth in § 1681s-2(b)(1)(D)-(E), i.e., to modify, delete, or permanently block the reporting of that information.

The crux of Plaintiff's assertions is that Ocwen did not lend him $192,000 in April 2008 and therefore, his credit reports are inaccurate because they show that he owes the payments on that loan to Ocwen, instead of the "original creditor" who is not identified.  (*See* Doc. 40 at ¶¶ 34-52).  Those reports do not inaccurately state, as Plaintiff alleges, that Plaintiff "borrowed $192,000 from [Ocwen] for a real estate loan or conventional mortgage." (Doc. 40 at ¶ 52).  Instead, those reports list "Ocwen Loan Servicing" under "Account Name," indicate that the account type is a mortgage and that the account was opened in April 2008, state the amount of the loan and payments, and reflect Plaintiff's payment history on the loan.  (*See* Doc. 40-1 at 11-14, 20-35).  Plaintiff has not identified any inaccuracies in that reported information. The Security Deed authorized the designation of a servicer, such as Ocwen, to collect payments due under the Note on behalf of the lender and to "perform[] other mortgage loan servicing obligations under the Note,

this Security Instrument, and Applicable Law." (Doc. 14-2 at 11). Thus, Plaintiff has not alleged facts that show that upon investigating Plaintiff's disputes, Ocwen concluded, or had reason to conclude, that it inaccurately reported to the consumer reporting agencies that Plaintiff owed it the monthly payments due under the Note and Security Deed, that it had inaccurately reported information about Plaintiff's payment history, or that it believed that the information was incomplete and needed to be supplemented. Plaintiff's disagreement with Ocwen's conclusions is insufficient to state a claim under § 1681s-2(b). *See, e.g.*, *Horton v. First Premier Bank*, No. 1:11-CV-03210-TWT-LTW, 2013 U.S. Dist. LEXIS 79105, at *20 (N.D. Ga. May 9, 2013) ("Thus, it appears that Plaintiff disagrees with Defendants' conclusions that the accounts belong to him. Simply disagreeing with the conclusions Defendants reached is insufficient to establish a claim under section 1681s-2(b)(1) for failure to conduct an investigation, failure to review the notice of dispute from the credit bureaus, or failure to report the investigation results to the consumer reporting agencies."), *adopted by* 2013 U.S. Dist. LEXIS 78612 (N.D. Ga. June 4, 2013).

Accordingly, the undersigned finds that Plaintiff has failed to state a claim under § 1681s-2(b). *See, e.g.*, *Smith*, 968 F. Supp.2d at 1167 (dismissing plaintiffs' FCRA claim because they failed to adequately allege how the defendant breached its duties under § 1681s-2(b)); *Horton*, 2013 U.S. Dist. LEXIS 79105, at *19-20

(finding that the plaintiff failed to state a claim under § 1681s-2(b) where he did "not allege any facts to establish that any Defendant failed to conduct an investigation after it received notice from the credit bureaus of Plaintiff's dispute, failed to review any information the credit bureaus provided in their notice, or failed to report the results of its investigation to the credit bureaus," and he failed to allege "that any Defendant's investigation revealed incomplete or inaccurate information with respect to Plaintiff's account, such that Defendant was required to report the findings to the credit bureaus and correct the information"). It is therefore **RECOMMENDED** that Ocwen's motion to dismiss Plaintiff's FCRA claim, premised on alleged violations of 15 U.S.C. § 1681s-2(b), be **GRANTED**.

## III.   <u>Plaintiff's FDCPA Claim</u>

Plaintiff alleges that Ocwen violated 15 U.S.C. §§ 1692g(a) and (b) by: failing to provide Plaintiff the name of the creditor to whom the alleged debt was owed and the amount of the alleged debt; sending communications to Plaintiff that were inconsistent with his rights under § 1692g(a); and failing to cease collection of the disputed debt without mailing Plaintiff verification of the debt or the name and address of the original creditor. (Doc. 40 at ¶ 95). Ocwen contends that Plaintiff's FDCPA claim should be dismissed because it is not a "debt collector" under the Act. (*See* Doc. 42-1 at 8-12). The undersigned agrees.

To prevail on a FDCPA claim, a plaintiff must show that:

(1) he has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA.

*Buckley v. Bayrock Mortg. Corp.*, No. 1:09-CV-1387-TWT, 2010 U.S. Dist. LEXIS 10636, at *21 (N.D. Ga. Feb. 5, 2010) (quotation omitted).   A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The term "debt collector" also includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purposes of which is the enforcement of security interests."  *Id.*

Ocwen is not a debt collector under the FDCPA, however, because its efforts to collect payment on that loan concerned a debt that was not in default when Ocwen began servicing the loan.  (*See* Doc. 40 at ¶ 19; *see also* Doc. 40-1 at 11-14, 23).  "The term 'debt collector' . . . does not include . . . any person collecting or attempting to collect any debt . . . to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  15 U.S.C. § 1692a(6)(F)(iii).  "Thus, a consumer's creditors, a mortgage servicing company, or an assignee of a debt are not considered 'debt collectors' so long as the debt was

not in default at the time it was assigned." *Anderson v. Deutsche Bank Nat'l Trust Co.*, No. 1:11-cv-4091-TWT-ECS, 2012 U.S. Dist. LEXIS 122130, at *9-10 (N.D. Ga. Aug. 6, 2012), *adopted by* 2012 U.S. Dist. LEXIS 122127 (N.D. Ga. Aug. 27, 2012); *see also Davis v. Bank of Am.*, No. 2:13-cv-231-WC, 2013 U.S. Dist. LEXIS 149228, at *17-18 (M.D. Ala. Oct. 17, 2013) ("Because the loan was not in default at the time Bank of America began servicing the loan, Bank of America is not a 'debt collector' under the FDCPA."); *Stroman v. Bank of Am. Corp.*, 852 F. Supp. 2d 1366, 1375-76 (N.D. Ga. Mar. 30, 2012) (dismissing FDCPA claim against mortgage servicers because they are not debt collectors under the Act where the plaintiff was not in default when they began servicing the loan); *LaCosta v. McCalla Raymer, LLC*, No. 1:10-CV-1171-RWS, 2011 U.S. Dist. LEXIS 5168, at *19 (N.D. Ga. Jan. 18, 2011) ("[T]he legislative history of 15 U.S.C. § 1692a(6), defining the term 'debt collector,' indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." (quotation omitted)).

Moreover, Ocwen's representations that it was a debt collector in its letters to Plaintiff (*see* Doc. 40-1 at 8, 40-43) do not indicate that it was a debt collector under the FDCPA. "[T]he relevant test of whether an entity is a debt collector under the FDCPA is whether the statutory definition applies, not whether the entity

21

has ever stated in a document that it is a debt collector." *Prickett v. BAC Home Loans*, 946 F. Supp. 2d 1236, 1249 (N.D. Ala. May 21, 2013). "Thus, to survive a motion to dismiss, a complaint must allege facts demonstrating that the defendant obtained the debt after the plaintiff was in default." *Id.* (finding that the plaintiff had "not ma[d]e such factual allegations, and, in fact, pled facts tending to show that BANA began servicing the loan before it was in default"); *see also Barber v. Rubin Lublin, LLC*, No. 1:13-CV-0975-TWT-AJB, 2013 U.S. Dist. LEXIS 179847, at *27-28 (N.D. Ga. Nov. 19, 2013) (rejecting the plaintiff's reliance on language in the defendant's correspondence that it was a debt collector to show that it was a debt collector under the FDCPA where the plaintiff failed to plead facts to show that the defendant met the FDCPA's definition of debt collector), *adopted by* 2013 U.S. Dist. LEXIS 179383 (N.D. Ga. Dec. 20, 2013).

Citing *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355 (6th Cir. 2012), Plaintiff contends, however, that because Ocwen was not a creditor, "it must be a debt collector with respect to that debt."   (Doc. 56 at 11).  In *Bridge*, the court wrote that "an entity which acquires a debt and seeks to collect it . . . is either a creditor or a debt collector and its collection activities are covered under the FDCPA."  681 F.3d at 359.  But the court went on to explain:

> For an entity that did not originate the debt in question but acquired it
> and attempts to collect on it, that entity is either a creditor or a debt
> collector depending on the default status of the debt at the time it was
> acquired.  *The same is true of a loan servicer*, which can either stand

22

> in the shoes of a creditor or become a debt collector, *depending on whether the debt was assigned to servicing before the default or alleged default occurred*.

*Id.* (emphases added). The court ultimately held "that the definition of debt collector pursuant to § 1692a(6)(F)(iii) includes any non-originating debt holder that either acquired a debt in default or has treated the debt as if it were in default at the time of acquisition." *Id.* at 362. Thus, under *Bridge*, Ocwen was not a debt collector as defined by the FDCPA because it did not acquire a debt in default, nor has Plaintiff alleged any facts that Ocwen treated the debt as if it were in default when it acquired the servicing rights to the loan. Instead, it was simply a loan servicer that stood "in the shoes of a creditor." *Id.* at 359.

Because Plaintiff has failed to allege facts that plausibly show that Ocwen was a "debt collector" under the FDCPA, it is **RECOMMENDED** that Ocwen's motion to dismiss Plaintiff's FDCPA claim be **GRANTED**.

## CONCLUSION

It is **RECOMMENDED** that Ocwen's motion to dismiss Plaintiff's claims against it be **GRANTED** and that all of Plaintiff's claims against Ocwen be **DISMISSED with prejudice**.[8]

---

[8] The undersigned acknowledges that where "a more carefully drafted complaint might state a claim," the court must allow a *pro se* plaintiff "at least one chance to amend the complaint before the district court dismissed the action with prejudice," unless amendment would be futile. *Lee v. Alachua Cnty.*, 461 Fed. Appx. 859, 860 (11th Cir. 2012) (unpublished decision). The Court has already allowed Plaintiff

**IT IS SO REPORTED AND RECOMMENDED** this <u>14th</u> day of <u>April</u>, 2015.

      <u>/s/ *J. Clay Fuller*</u>
      J. CLAY FULLER
      United States Magistrate Judge

---

the opportunity to amend his claims against Ocwen, however, and therefore, the undersigned finds that dismissal with prejudice is appropriate.